UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM FARRINGTON,

                        Plaintiff,

                                                                     Case # 19-CV-6802-FPG

v.

                                                                     DECISION AND ORDER

FINGERLAKES1.COM, INC.,

                        Defendant.

## INTRODUCTION

Plaintiff William Farrington brings this action against Defendant Fingerlakes1.com, Inc. ECF No. 1. Plaintiff alleges claims for copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA"). *Id.* Plaintiff moves for default judgement against Defendant. ECF No. 11. For the following reasons, Plaintiff's motion is GRANTED.

## BACKGROUND

### I.   Procedural History

On November 4, 2019, Plaintiff filed an Affidavit of Service stating that Defendant had been served with the summons, civil cover sheet, and Complaint on that same date. ECF No. 5.[1] Defendant's responsive pleading was due by November 25, 2019. *Id.*; *see* Fed. R. Civ. P. 12(a)(1)(A). No responsive pleading was filed and no other substantive action was taken in this

---

[1] The affidavit states Defendant was served via "a clerk in the office of the Secretary of State, of the State of New York" "in the City of Albany" and paid the associated fee, which is a proper method of service. ECF No. 5; *see* Fed. R. Civ. P. 4(h)(1)(B) (permitting service on a corporation via "any . . . agent authorized . . . by law to receive service of process"); N.Y. Bus. Corp. Law § 306(b)(1) ("Service of process on the secretary of state as agent of a domestic . . . corporation shall be made by personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee . . . . Service of process on such corporation shall be complete when the secretary of state is so served."); *see also Sadowski v. Roser Commc'ns Network, Inc*., No. 19-CV-592, 2019 WL 6728746, at *2 n.3 (N.D.N.Y. Dec. 11, 2019) (noting that service by this method is authorized but also noting "it is fair to say that this circuitous route to service renders effective notice less likely than a more direct method").

matter[2] until the Court issued an Order to Show Cause ("OTSC") on July 29, 2020 requiring Plaintiff to show cause by August 31, 2020 why the case should not be dismissed for failure to prosecute. ECF No. 7. The Court warned that "[f]ailure to comply . . . w[ould] result in the dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure ["Rule"] 41(b) without further order of the Court." *Id.*

On August 28, 2020, Plaintiff filed a Request for Clerk's Entry of Default, which was entered on August 31, 2020. ECF No. 9, 10. On August 31, 2020, Plaintiff moved "for default judgment in the amount of $5,000.00 in statutory damages under 17 U.S.C. § 504(c); $5,000.00 in statutory damages under 17 U.S.C. § 1203(c)(3)(B); $288.00 in attorney's fees and $440.00 costs under 17 U.S.C. § 505; and for such further relief as this Court deems just and proper." ECF No. 11. On that same date, Plaintiff filed the "Declaration of Richard Liebowitz" in support of his request for default. ECF No. 12. On September 1, 2020, forty-two minutes after the deadline set by the Court, Plaintiff filed a response to the OTSC. ECF No. 14.

## II.    Facts

The following facts are taken from the complaint, unless otherwise noted. Plaintiff is a professional photographer who licenses his photographs to online and print media for a fee. ECF No. 1 ¶ 5. Plaintiff photographed a politician, Marcus Molinaro, and licensed the photograph to the New York Post, which included the photograph in an article published on September 29, 2018.

---

[2] On July 27, 2020, Plaintiff filed a "Notice of Order" that his attorney, Richard Liebowitz, was ordered to file in all currently pending cases pursuant to sanctions imposed in another matter. ECF No. 6. The notice details reprehensible conduct by Liebowitz in litigation before the U.S. District Court for the Southern District of New York and other courts. *Id.* (noting numerous incidents of misconduct, including lying "under oath, about the date his own grandfather had died to justify his failure to attend a court conference"). Because of his misconduct, Liebowitz has been suspended from practice before the Southern District and has faced a multitude of sanctions in other courts. *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368, 2020 WL 7028566, at *3–4 (S.D.N.Y. Nov. 30, 2020); *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368, 2020 WL 3483661, at *22–27 (S.D.N.Y. June 26, 2020). Liebowitz has not, as of yet, been suspended from practicing law in this Court or more broadly in the State of New York.

2

*Id.* ¶¶ 7–8. Plaintiff's name was included in a gutter credit that identified him as the photographer. *Id.* ¶ 8. The photograph is registered with the United States Copyright Office under registration number VA 2-127-016, effective November 14, 2018. *Id.* ¶ 10; ECF No. 12-4. Plaintiff is the author and sole owner of the copyright in the photograph. ECF No. 1 ¶ 9; ECF No. 12-4.

Defendant owns and operates a website: www.FingerLakes1.com. ECF No. 1 ¶ 6. On November 4, 2018, Defendant published an article that included the photograph. *Id.* ¶ 11. Defendant did not license the photograph from Plaintiff or otherwise have permission to use the photograph. *Id.* ¶ 12. Defendant copied the photograph from the New York Post article but did not copy the gutter credit identifying Plaintiff as the photographer. *Id.* ¶ 21.

## LEGAL STANDARD

### I. Compliance with OTSC

Rule 41(b) "gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). Before dismissing a case for failure to prosecute, this Court must consider: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and [5] whether the judge has adequately assessed the efficacy of lesser sanctions." *Id.* (internal quotation marks omitted) (brackets in original).

### II. Default Judgment

Rule 55 sets forth the procedure for obtaining a default judgment. First, the plaintiff must secure an entry of default from the clerk, which requires a showing, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend" itself in the action. Fed. R Civ. P.

55(a). Once the plaintiff has obtained an entry of default, and if his claim against the defendant is not "for a sum certain," the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)–(2).

The clerk's entry of default does not mean that default judgment is automatically warranted. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam). Instead, "the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Id.* If liability is established, the Court must then determine the proper amount of damages, which typically requires evidentiary support. *See id.* at 189 ("[A] party's default . . . is not considered an admission of damages." (internal quotation mark omitted)).

## DISCUSSION

**I.     Compliance with Order to Show Cause**

Liebowitz did not comply with the Court's OTSC. Instead of filing a sworn affidavit "explaining in detail why the action should not be dismissed" by August 31, 2020, ECF No. 7, Liebowtiz filed a brief on September 1, 2020 arguing that a Rule 41(b) dismissal is a harsh remedy that would be inappropriate under the circumstances of this case. ECF No. 14 (citing *LeSane*, 239 F.3d at 209). Although the Court finds Liebowitz's conduct in other cases troubling and entirely consistent with, albeit substantially worse than, his failures here, *see, e.g.*, *Usherson*, 2020 WL 7028566, at *3 (discussing Liebowitz's poor "case management practices"); *Mondragon v. Nosrak LLC*, No. 19-CV-1437, 2020 WL 2395641, at *3 (D. Colo. May 11, 2020) (noting that Liebowitz "has demonstrated, both in this case and in many other copyright cases in this and other districts, a disregard for basic federal courtroom rules, procedures, and practices"), the factors the Court

4

must consider do not favor dismissal in this case and the Court perceives no basis for dismissing Plaintiff's claims based on Liebowitz's conduct in other cases. *See Usherson*, 2020 WL 3483661, at \*19, n.7 (declining "to sanction [Liebowitz's client] as the sins of the lawyer are not automatically visited on the client, and the evidence in the record d[id] not clearly and convincingly demonstrate any bad-faith misconduct by [the client]").

First, the Court must consider the duration of the Plaintiff's failures. Plaintiff's initial delay in moving for default was lengthy, *see LeSane*, 239 F.3d at 211 (describing cases "involv[ing] delays of many months, in spite of repeated warnings" as among the "more egregious" examples of a failure to prosecute), and Liebowitz has not proffered *any* excuse for that lengthy delay or his late filing of Plaintiff's response to the OTSC. Plaintiff did, however, act reasonably quickly after issuance of the OTSC to request that the Clerk of Court enter default and to move for a default judgment after the Clerk of Court entered default. ECF Nos. 8–13. Further, Plaintiff's response to the OTSC was less than an hour late. *See LeSane*, 239 F.3d at 210 ("[A]lthough plaintiff's prosecution of his case had been less than ideally efficient for over a year, his actual non-compliance with the district court's order—the failing that caused the district court to dismiss his case—was barely a month old."). On balance, the Court finds that this factor weighs only slightly towards dismissal.

Second, the Court must consider whether Plaintiff received notice that further delays would result in dismissal. The Court's OTSC was Plaintiff's first warning that his delay could result in dismissal of the matter. Liebowitz's response is not, however, compliant with Local Rule of Civil Procedure ("Local Rule") 41(b), which provides that Plaintiff was to "respond to the [OTSC] by filing sworn affidavits explaining in detail why the action should not be dismissed." Local Rule 41(b)'s sworn-affidavit requirement was specifically referenced in the Court's OTSC. ECF No. 7

5

at 1. The OTSC ultimately directed the "Plaintiff to show cause in writing . . . why this case should not be dismissed for failure to prosecute." *Id.* As an attorney, Liebowtiz should have known that his written response needed to be a "sworn affidavit" based on the Local Rule and the OTSC's reference to that requirement. This is particularly true given that this is not the first time Liebowitz has responded to an OTSC issued by this Court and, in the prior matter, Liebowtiz properly responded with a sworn declaration. *See* Decl. of Counsel in Resp. to OTSC, *Mantel v. Smash.com Inc.*, No. 19-CV-6113, 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019) (ECF No. 14). The OTSC did not, however, specifically warn that filing a written response that was not a sworn affidavit would result in dismissal of the action. ECF No. 7. Dismissing Plaintiff's claims for this failure seems harsh. *See Lewis v. Frayne*, 595 F. App'x 35, 37 (2d Cir. 2014) (summary order) (finding that order to show cause did not sufficiently warn a *pro se* plaintiff that his case might be dismissed pursuant to Rule 41(b) where the order "warned only that his failure to respond to the order *could* result in dismissal"). The Court finds that this factor weighs only slightly in favor of dismissing Plaintiff's claims.

With respect to the third and the fourth factors, the Second Circuit has looked to evidence of prejudice to the defendant and to unusual strain placed on the court's docket by the party's actions. *Baptiste v. Sommers*, 768 F.3d 212, 218–19 (2d Cir. 2014) ("[T]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." (internal quotation marks omitted)). There is no indication Defendant has suffered prejudice, and Plaintiff's actions have not placed any unusual strain on the Court's docket. *See Lewis*, 595 F. App'x at 38 (finding no prejudice where there were "no indications that the delay increased the litigation costs the defendants had to bear or reduced (perhaps due to decaying evidence) their likelihood of success on the merits"); *Chance v. Pac*, 233

6

F. App'x 27, 28 (2d Cir. 2007) (summary order) ("Because the defendants have not appeared in the action . . . it is unlikely that they have suffered actual prejudice [from failure to prosecute]."); *LeSane*, 239 F.3d at 210 ("[P]laintiff's failure to prosecute in this case was silent and unobtrusive rather than vexatious and burdensome: plaintiff simply did not make submissions required by the court; he did not swamp the court with irrelevant or obstructionist filings."). The only prejudice that can be attributed to Liebowitz's inattention to this matter is the needless delay Plaintiff has suffered in obtaining relief. Accordingly, the Court dismissing Plaintiff's apparently meritorious claims would only further punish Plaintiff for his counsel's failures. *See Smalls v. Cnty. of Suffolk*, 718 F. App'x 16, 19 (2d Cir. 2017) (summary order) (holding that court abused its discretion by dismissing plaintiffs' claims based on their attorney's "tardy arrival in court for a pre-trial conference" and noting that the "[p]laintiffs were not the offenders"). Accordingly, the third and the fourth factors strongly favor allowing Plaintiff's claims to proceed.

Fifth, the Court must consider lesser sanctions. Generally, this factor will not favor dismissal if the Court "has the means to move this case forward efficiently without the cudgel of extreme sanctions." *Baptiste*, 768 F.3d at 219. Based on his conduct in other actions, there is reason to believe that Liebowitz's deleterious conduct cannot be deterred by sanctions. *Usherson*, 2020 WL 3483661, at *19 ("If specific deterrence — that is, deterring Mr. Liebowitz from repeating his misconduct — were the sole consideration, it is not clear that any sanction (short of, perhaps, disbarment) would suffice."). Because the Court's OTSC has prompted Plaintiff to move for entry of default and the Court has determined that granting Plaintiff's motion for default is appropriate, however, the Court's ability to move the case forward is no concern. Accordingly, the fifth factor favors allowing Plaintiff's claims to proceed.

In short, the factors, on balance, favor permitting Plaintiff's claims to proceed.

7

**II.     Motion for Default**

Plaintiff moves for default judgment on both of his claims. The Court first evaluates whether Plaintiff's allegations, taken as true, establish Defendant's liability. *See Moulton Masonry*, 779 F.3d at 187. The Court then must determine the proper amount of damages. *Id.* at 189. The Court must "take the necessary steps to establish damages with reasonable certainty," but a hearing is not required "as long as [the Court] ensure[s] that there [i]s a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks omitted).

   *A.     Liability*

       1.     Copyright Infringement

Plaintiff alleges that Defendant's conduct violated Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501. ECF No. 1 ¶ 15. To prevail on a copyright infringement claim, the plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011).

Plaintiff has adequately alleged every element of his copyright infringement claim. Plaintiff has established ownership of a valid copyright in the photograph at issue and that Defendant reproduced the entirety of the photograph (*i.e.*, more than its constituent elements) without Plaintiff's consent by including the photograph in an article published on Defendant's website. *See Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 303 (S.D.N.Y. 2017) ("A certificate of registration is *prima facie* evidence that a copyright is valid."); *Mariasy v. Poopy Prods., Inc.*, No. 20-CV-461, 2020 WL 6781521, at *1 (N.D.N.Y. Nov. 18, 2020) ("[R]eview of the two photographs demonstrates that [defendant] copied the entirety of the work, and thus certainly copied its constituent elements."). Further, it does not appear that there

can be any dispute that the photograph at issue was "original" for purposes of copyright protection. *See Boesen v. Dimoro Enters., LLC*, No. 20-CV-354, 2020 WL 5891563, at *2 (N.D.N.Y. Oct. 5, 2020) (noting that "[t]he requirements for originality are modest" (internal quotation marks omitted)). Accordingly, Plaintiff's allegations establish liability with respect to his copyright infringement claim.

2. DMCA Violation

Plaintiff alleges that Defendant violated the DMCA by removing copyright management information ("CMI") from the photograph. ECF No. 1 ¶¶ 23–25, 27. The DMCA "protects against the removal or alteration of [CMI], which is defined in part as identifying information about the author of a work 'conveyed in connection with' the work." *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 376 (S.D.N.Y. 2019) (quoting 17 U.S.C. § 1202(c)); 17 U.S.C. § 1202(b)(1). Plaintiff's DMCA claim has four elements: (1) the existence of copyright management information on the infringed work; (2) removal and/or alteration of that information; (3) that the removal and/or alteration was done intentionally; and (4) that the removal was done with knowledge or reason to know that it will induce, enable, facilitate, or conceal an infringement. 17 U.S.C. § 1202(b)(1); *see also Mango*, 356 F. Supp. 3d at 376–77.

Plaintiff has sufficiently alleged that the photograph was initially published with a gutter credit. The gutter credit constitutes "CMI because it identified [Plaintiff] as the author of the [photograph] and was 'conveyed in connection with' the [photograph]'s publication in the New York Post article." *Hirsch v. Sell It Social, LLC*, No. 20-CV-153, 2020 WL 5898816, at *3 (S.D.N.Y. Oct. 5, 2020). Defendant's default establishes that its removal of the gutter credit was intentional. *Id.*; ECF No. 1 ¶ 25. Further, Defendant had reason to know that removing the gutter credit would conceal an infringement—namely, its own—because doing so would hide the

authorship of the photograph. *Hirsch*, 2020 WL 5898816, at *3; ECF No. 1 ¶ 25. Accordingly, Plaintiff's allegations establish that Defendant violated the DMCA.

    B.    *Damages*

        1.    Copyright Infringement

Plaintiff seeks $5,000 in statutory damages for his copyright infringement claim. ECF No. 11. Plaintiff may pursue statutory damages in an amount ranging from $750 to $30,000 for each copyrighted work. 17 U.S.C. § 504(c)(1).[3]

"In awarding statutory damages, courts have broad discretion to set the amount of the award within the statutory limits." *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *6 (S.D.N.Y. Mar. 29, 2017), *report and recommendation adopted*, 2017 WL 1906902 (May 9, 2017). Courts consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Defendant's willfulness is demonstrated by its default in this litigation and its operation of a website that publishes articles. *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) ("Copyright infringement is deemed willful by virtue of a defendant's default.");

---

[3] In order to recover statutory damages and attorney's fees under the Copyright Act, Plaintiff must also show that the copyright was: (1) registered within three months of its first publication; or (2) prior to the allegedly infringing use. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 n.1 (2d Cir. 2001) (citing 17 U.S.C. § 412). Plaintiff established that the photograph's registration was effective November 14, 2018. ECF No. 12-4. The Defendant reproduced the photograph on November 4, 2018. ECF No. 1 ¶ 11. Although Plaintiff's complaint does not allege when the photograph was first published, the complaint alleges that it was published by the New York Post on September 29, 2018 (within three months of its registration) and Liebowitz's affidavit clarifies that the photograph "was registered within three months of initial publication." ECF No. 1 ¶ 8; ECF No. 12 ¶ 14. Accordingly, the Court accepts for purposes of Plaintiff's motion for default that the photograph was registered within three months of its first publication.

*Idir v. La Calle TV, LLC*, No. 19-CV-6251, 2020 WL 4016425, at *3 (S.D.N.Y. July 15, 2020) ("[T]he Court credits the plaintiff's contention that the defendant operates in the publishing industry and is presumed to have knowledge of copyright law, supporting a finding that the plaintiff acted willfully."). Accordingly, the first factor weighs in favor of a substantial award of statutory damages. *See Hirsch*, 2020 WL 5898816, at *4. *But see Idir*, 2020 WL 4016425, at *3 (discounting this factor because there was no evidence of pre-litigation activity ignored by the defendant, such as a cease-and-desist letter). Similarly, based on Defendant's default, Defendant has not cooperated in providing evidence concerning the value of the infringing material and the fifth factor supports a substantial award of statutory damages. *Idir*, 2020 WL 4016425, at *3. Further, the Court does not doubt that an award of statutory damages could deter future infringements by the Defendant and third parties. *Hirsch*, 2020 WL 5898816, at *4 (noting that "there is a deterrent value in assessing statutory damages against defendants who . . . are in the publishing industry" (internal quotation marks omitted) (omission in original)).

Plaintiff, however, has not presented evidence showing Defendant's financial gain from the infringement or Plaintiff's revenue lost; the second two factors accordingly do not support a substantial award. *Id.* ("Because Plaintiff has proffered that he has licensed the Photo but has not supplied the Court with the amount of his fee, the Court infers that any lost revenue is *de minimis*."). As to the final factor, the conduct and attitude of the parties, although Defendant's conduct in defaulting in this litigation weighs in favor of a substantial award, Plaintiff's failure to provide any evidence that might assist the Court in evaluating the appropriateness of the statutory award sought—such as the fee he received for licensing the photograph to the New York Post, ECF No. 12 ¶ 4, or general information regarding fees he typically receives—weighs against a substantial award. *See Hirsch*, 2020 WL 5898816, at *4 ("[T]he sixth factor . . . also warrants a

11

less substantial award, as Plaintiff's decision to withhold information about the Defendant and his own licensing history has hindered the Court in its assessment of the basis for the requested statutory damages."). Plaintiff's long delay in prosecuting this matter further counsels against a large statutory award.

Considering all of these factors, the Court finds that $2,500—not $5,000—in statutory damages is reasonable. Although other courts have awarded greater amounts, *id.* at *5 (awarding $5,000 in statutory damages under similar circumstances (collecting cases)); *Mariasy*, 2020 WL 6781521, at *2 ("[I]n light of plaintiff's lack of evidence that he actually suffered any harm, and the relatively mild infringement of a single photograph in this case, plaintiff's requested $5,000 in damages, though not unreasonable, is still higher than the Court can grant. Accordingly, plaintiff may recover $3,750.00 in damages for copyright infringement under § 501."), this Court and others in this Circuit have declined to award more than $2,500 under similar circumstances. *Mantel v. Smash.com Inc.*, No. 19-CV-6113, 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019) (awarding $2,500 in statutory damages under similar circumstances); *Idir*, 2020 WL 4016425, at *3 (awarding $2,500 and explaining that "defendant's apparent willfulness and the need to deter such conduct justifies an award greater than the minimum of $750, but a higher award is not warranted where there is no evidence of actual losses or additional evidence of willfulness on the part of the defendant"); *Impulsive Music, Inc. v. Bryclear Enters., LLC*, 483 F. Supp. 2d 188, 190–91 (D. Conn. 2007) (awarding $2,500 per violation where defendants demonstrated willfulness but plaintiffs could not "quantify any actual loss suffered"); *Philpot*, 2017 WL 9538900, at *9–10 (awarding $5,000 for unauthorized use of two photographs); *Dermansky v. Telegraph Media, LLC*, No. 19-CV-1149, 2020 WL 1233943, at *6 (E.D.N.Y. Mar. 13, 2020) (awarding $1,000 in statutory damages where "there [wa]s only one alleged act of infringement, there [we]re no cease-

and-desist letters, there [we]re no requests for injunctive relief, and there [wa]s no evidence of any actual harm"); *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475, 2020 WL 4738242, at *4 (E.D.N.Y. Aug. 14, 2020) ("[T]he Court finds that a statutory damages award of $1,000 is reasonable given the nature of the infringement alleged and the lack of a baseline amount of Plaintiff's licensing fee or any loss of profits."). Defendant's willfulness—and the need to deter such conduct—justifies an award greater than the minimum, but absent any actual loss, those factors are not so weighty as to warrant an even larger award.

        2.     DMCA Violation

A Plaintiff may collect statutory damages under both the Copyright Act and the DMCA. *Hirsch*, 2020 WL 5898816, at *5. The DMCA permits recovery of between $2,500 and $25,000 in statutory damages per violation. 17 U.S.C. §§ 1202, 1203(c)(3)(B). Courts consider several factors in evaluating statutory damages under the DMCA such as "the actual damages to [p]laintiff, . . . the difficulty of proving actual damages, the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence." *Hirsch*, 2020 WL 5898816, at *5 (internal quotation marks omitted). Courts have found an award of $5,000 appropriate in circumstances like these, where there is evidence of willfulness but also a lack of evidence regarding Plaintiff's injury. *Mantel*, 2019 WL 5257571, at *4; *Hirsch*, 2020 WL 5898816, at *5; *Dermansky*, 2020 WL 1233943, at *6; *Myeress v. Elite Travel Grp. USA*, No. 18-CV-340, 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018). The Court agrees that an award of $5,000 is justified.

    C.    *Attorney's Fees*

Plaintiff asks the Court to award $288 in attorney's fees under 17 U.S.C. § 505. ECF No. 12 ¶ 30. A prevailing plaintiff may be awarded attorney's fees under the Copyright Act. 17 U.S.C.

§ 505. "When determining whether to award attorney[']s fees [and costs], district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Because Defendant defaulted, awarding attorney's fees and costs is appropriate. *See Reilly v. Plot Com.*, No. 15-CV-5118, 2016 WL 6837895, at *12–13 (S.D.N.Y. Oct. 31, 2016) (recommending an award of attorney's fees and costs because defaulting defendant's copyright infringement was deemed willful).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at *12 (internal quotation marks omitted). "The burden is on the fee applicant to provide evidence that the requested hourly rates are the prevailing market rates." *Id.* (internal quotation marks omitted). "A prevailing market rate should be in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (internal quotation marks and brackets omitted)

Liebowitz claims his rate in this District is $180 an hour. ECF No. 12 ¶ 31. Liebowitz is the founding member and managing partner of Liebowitz Law Firm, PLLC and has filed over a thousand copyright infringement lawsuits since 2016. *Id.* Given his background, this Court has previously concluded that $180 per hour is a reasonable rate for Liebowitz's representation in this District. *Mantel*, 2019 WL 5257571, at *4; *see also Sadowski v. Roser Commc'ns Network, Inc.*, No. 19-CV-592, 2020 WL 360815, at *5 (N.D.N.Y. Jan. 22, 2020) (finding that a rate of $190 per hour was appropriate for Liebowitz).

Liebowitz claims to have spent 1.6 hours working on this matter, including time to review the case file, to draft and file the complaint, to request entry of default, and to draft the application for default judgment. ECF No. 12 ¶ 31. Liebowitz does not claim time for his brief response to the OTSC, *id.*, and although this Court has previously noted Liebowitz's tendency to claim time for apparently recycled documents, the time he seeks here appears reasonable even if the documents he drafted were largely recycled from prior cases. *Mantel*, 2019 WL 5257571, at *4–5 (finding that three hours of work was reasonable in similar case). In short, the attorney's fees requested by Liebowitz here appear reasonable and are substantially lower than the fees he has requested and been awarded in similar cases. *See Hirsch*, 2020 WL 5898816, at *5–6 (awarding $1,912.50 in attorney's fees); *Balhetchet*, 2020 WL 4738242, at *5 (awarding $787.50 in attorney's fees); *Idir*, 2020 WL 4016425, at *4–5 (awarding $2,975 in attorney's fees).

Accordingly, the Court awards Plaintiff $288 in attorney's fees.

*D.     Costs*

A prevailing plaintiff may recover litigation costs under the Copyright Act. 17 U.S.C. § 505; *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721, 2019 WL 312149, at *12 (E.D.N.Y. Jan. 3, 2019). Liebowitz seeks $400 for the court filing fee and $40 for the fee charged by the New York Secretary of State for service. ECF No. 12 ¶ 31; *see also* ECF Nos. 1, 5. Such costs are reasonable, recoverable, and regularly awarded to Liebowtiz in similar cases. *E.g.*, *Mantel*, 2019 WL 5257571, at *5.

*E.     Other Issues*

The Court is well aware of the flaws previously identified in copyright lawsuits filed by Liebowitz. *E.g.*, *Usherson*, 2020 WL 3483661, at *16–17 (filing a complaint and citing a registration number for a different photograph where the photograph at issue was not registered

15

until after the lawsuit was filed); *Steeger v. JMS Cleaning Servs., LLC*, No. 17-CV-8013, 2018 WL 1363497, at *2 (S.D.N.Y. Mar. 15, 2018) (noting that Liebowitz has been "plagued" by a "pattern of omissions and misrepresentations"). If Defendant ultimately appears and seeks to set aside the default judgment based on one such flaw or based on some other, presently unknown defense, the Court is perfectly capable of considering any such defenses in due course. *See* Fed. R. Civ. P. 55(c). Presently, however, the showing Plaintiff has made is sufficient to warrant a default judgment against Defendant. *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations.").

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for a default judgment, ECF No. 11, is GRANTED. Plaintiff is awarded $2,500 in statutory damages for his copyright infringement claim, $5,000 in statutory damages for this DMCA claim, $288 in attorney's fees, and $440 in costs. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 15, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court